Thank you, Your Honors. Good morning. Jeff Dahlberg on behalf of Mr. Eyle. Before I begin, I'd like to attempt to reserve two minutes for rebuttal. All right. Your Honors, the District Court erred in two main respects in this case. The first was through its ruling that ordered DE to testify by two-way closed-circuit television in this case. And that was an error for three main reasons. The first reason is because the District Court was required to hold an evidentiary hearing to determine whether DE was actually unable to testify for one of the reasons articulated in Section 3509 and simply didn't do that in this case. The second reason is because even assuming the District Court wasn't required to hold that evidentiary hearing, it was required to make very specific findings under the Supreme Court precedent and under Section 3509, and it simply did not make those required findings. And finally, with respect to the Confrontation Clause ruling, the rulings that the District Court did make, even if they could be construed to be considered findings, simply weren't adequate under the Supreme Court precedent and Section 3509. The second reason that the District Court erred was that through its ruling, finding that Mr. Ailey's two prior convictions constituted crimes of violence under the guidelines. I'd like to start off with the Confrontation Clause issue. As this Court is aware, under Maryland v. Craig, the Supreme Court actually analyzed the suitability of a one-way closed-circuit television provision under a Maryland statute. And in that case, the Supreme Court was very clear that before actually ruling on whether that would be appropriate and allowing a minor to testify through that procedure, the District Court has to hear evidence. The government concedes that the evidentiary hearing requirement is applicable to a certain provision of the Section 3509 statute. And I think that the Eleventh Circuit in Yates, which was cited in our brief, indicates that in the only applicable circuit court decision that's actually considered this head-on, the evidentiary hearing requirement is a strict requirement. The District Court must actually hold that evidentiary hearing. I think that's clear. Sotomayor, what case says that the evidentiary hearing requires in-court testimony as opposed to affidavits? Your Honor, I would say that the Yates decision actually holds that, and that's an Eleventh Circuit decision that it must hold an evidentiary hearing. And I think that's also implicit in the plain text of Craig, where the District Court actually held that evidentiary hearing, and the Supreme Court announced we're not going to specify the exact prerequisites or the exact evidentiary standards that must be met, but it's very clear that the District Court must hear evidence. And if it's only receiving affidavits that are completely one-sided without the opportunity to test those assumptions and those conclusions that the individuals who are submitting those reports or affidavits are making, then the District Court isn't hearing evidence. It's receiving affidavits from one side without the opportunity to actually test those. I hope that answered Your Honor's question. Thank you. But even if the evidentiary hearing requirement didn't actually require an in-court hearing where the District Court was receiving evidence and providing for cross-examination, which we would maintain that it does, the District Court didn't make the required findings. And I think it's very clear under the statute. What additional findings would you – I've read the Court's order, which may not be set out in terms of actual findings 1, 2, 3, 4, but what would you have thought should be in there that wasn't in there? Well, there's a few findings, I think, that should have been in there. I think the key one, which was required under Craig, is that the trauma or the fear that the District Court thinks is present has to be more than de minimis. And I think it's clear from the District Court's oral ruling as well as its written ruling that while it did specify that it thought that DE was fearful, it didn't specify the quantum of fear, whether that fear was more than de minimis. And it also didn't separate out whether the fear – whether DE was actually unable to testify due to fear of Mr. Iley or whether that was due to fear of or trauma of retelling the events or the courtroom generally. And there was plenty of discussion in the expert report as well as at oral argument or at the pretrial conference on that issue whether the degree to which the court could separate out the fear of Mr. Iley specifically being present in the courtroom versus the generalized trauma of being in the courtroom and being forced to testify. I think that another finding that it should have made is that DE simply was unable to testify. I think that the District Court found that DE was frightened, that she was distressed, that she was afraid of the defendant, and that's ER 318, and that being in the same room would be an emotional trauma but did not actually find, specifically find, that DE was unable to testify due to fear or unable to testify due to trauma. So I think those are very specific findings that the District Court had to make under Craig and also under Section 3509 and simply didn't make. Even if we could consider the District Court's ruling to actually constitute findings of fact, I think that those findings were clearly erroneous. The District Court found simply that the television procedure contemplated in 3509 would somewhat mollify the defendant's fear or the trauma that DE would undergo or experience by testifying, but it did not actually find that DE would be unable to testify and that the video procedure would be the only way that she would be able to testify. Second, with respect to the crime of violence ruling, we would argue the same points that we made in our brief, which would be that the District Court simply found that the two prior convictions were crimes of violence under the commentary to the guidelines which specified that forcible sex offenses were one of the – could constitute a predicate for purposes of the guidelines. The prior convictions that Mr. Eilley has are not crimes of violence under the force clause or under the elements clause, rather. They don't fall under the enumerated offense clause, and neither the government nor the District Court ever actually relied on the residual clause to find that those were crimes of violence. If there's no further questions, I'll reserve the remainder of my time. You may. Thank you. May it please the Court, Tom Hamill in preparing for the United States. The District Court properly determined that the victim in this case was unable to testify in court due to her fear of the defendant. In order to understand the District Court's findings, it's important to understand what happened to the victim and what information was relayed to the District Court. In this case, as the Court is aware from the briefing, the victim was 8 years old. She was abducted. She was dragged into the defendant's house. She was anally penetrated, orally penetrated, and he licked her vagina. The victim's mom realized that she was missing, and she went to the house looking for her. She was aware the defendant had previously molested two other family members, and she knew that he was a registered sex offender. When she went to the house, she found the child. The child's clothing was different because the shirt was on backwards. Within 10 minutes of finding her daughter, the victim broke down and disclosed what had happened, that the defendant had anally penetrated her. Based upon that information, the victim's mom took her to the police department and then brought her to the hospital. At the hospital, the victim met with the registered nurse who conducted the rape kit. At that time, the victim at first appeared to be okay. When asked about what happened, she began crying. She told the registered nurse that the defendant had threatened to harm her if she disclosed what happened. After that point in time, as the case was developed before the district court, the government filed a motion under 3509 to allow the victim to testify by two-way television cameras. The district court was aware of the following facts. The district court was aware of an affidavit prepared by Agent North in which the victim's mother stated that she talked with the victim repeatedly, presumably a mother knows her child better than anyone else, and the victim stated she was very scared of the defendant. And the victim's mother stated that the victim would be unable to testify in a courtroom if the defendant was present. The district court was aware of that. The district court was aware of the registered nurse's information and that the victim told her that the defendant had threatened to harm her if she disclosed the abuse. Part of the records from the registered nurse were also provided to the district court, which detailed or documented the victim's demeanor at the hospital and how she began crying hysterically during this procedure at the hospital. The district court was aware of that. The district court was also aware of Dr. Muscatel's findings who met with the victim. In that report, it corroborated the affidavit that was supplied by Special Agent North in that the victim's mom again confirmed that she had spoken to her daughter. Her daughter stated that she was scared of the defendant. Dr. Muscatel asked this young child if she'd be able to testify if the defendant was in the same room, and the defendant then nodded her head no and said that she was scared. So the district court had all of this information available when making a determination whether or not the victim was scared and would she be able to testify in court. But in addition to all of that facts, just as in the actual case. It was simply whether if you have an expert report or affidavits, do you have testimony and do you meet the requirements of the statute. So I would appreciate if you could address your argument to that point. Absolutely, Your Honor. And I would submit that based upon the Ninth Circuit precedent, the answer would be no. The Yazzie case was a consolidated case of Mr. Yazzie and Mr. George where the government moved to close the courtroom. You probably meant the answer should be yes. I'm sorry. From your perspective. I apologize, Your Honor. In the Yazzie case, in regards to the court closure under 3509E, this court determined that it was not required to have a hearing. In both George and Yazzie, all the district court was provided by the parties. Strike that. All the parties provided to the district court were the forensic interview recordings. And in those two cases, those two district courts reviewed those recordings and determined that it was appropriate due to the harm of the child to close the courtroom. In this case, the court had all the information that I already discussed. In addition, the government provided the court with a copy of the forensic interview from August 1st in which the victim broke down crying and needed her mother. And we also provided the district court with a transcript of the second forensic interview that the victim participated in. So based upon the precedent from the Ninth Circuit, it's the government's position that an evidentiary hearing was not required. And furthermore, in the Yazzie case, this court determined that under 3509B1B, that the only provision that would require expert testimony would be under provision B1B2. And under B1B1, which is the fear of the defendant, this court clearly, after reviewing that statute, determined that expert testimony was not required. In response to a defense counsel statement, he indicates that the Yates case is head-on in regards to this case. The government's position would be that the Yates case is clearly distinguishable. In the present case, we're talking about an eight-year-old child having fear of the defendant. In the Yates case, that involved adults who lived in Australia that were involved in some sort of fraud case and they simply did not want to travel back to the United States to testify. So the government would argue that the facts are clearly distinguishable. Thank you. Unless the court has questions for me regarding 3509, I intend to move on to the crime of violence provision. Please. It's the government's position in regards to the crime of violence that the district court was bound to file a Ninth Circuit precedent, which was the Granboy's decision. In that decision, this court determined that a prior conviction under 2243E was a crime of violence. So it's the government's position that the district court was required to follow that Ninth Circuit precedent and determine that these prior convictions, the two prior sex convictions involving children, were crimes of violence. What about Beckles? Do you want to just mention Beckles case? I can discuss. Johnson and Beckles, it's the government's position. If you'd like me to start with Johnson, because that's what defense counsel addressed, that was in regards to the residual clause, so the potential for a risk of danger. It's the government's position that here the sexual assault of a child doesn't concern the residual clause. This is the use, attempted use, or threatened use of physical force. In my briefing, I discussed the Second Circuit Lausch case, which determined that under this statute, although force is not defined, force is required to commit sexual assault of a child or sexual contact with a child because you have to have that contact in order to sexually abuse a child. So force is necessarily required in order to make that contact. In regards to Beckles, whether this is an elements or a means test, it would appear that looking at the statute, this would be a divisible statute, but this Court has determined that crimes against children, sexual assault, forcible sex offenses are per se a crime of violence. Okay. Thank you. Thank you. Thank you. Thank you, Your Honors. I'd like to respond to the government's citation to the Yazzie case first. It cites to, I believe the government cited to the Yazzie case for the proposition that an evidentiary hearing is not always required or that a hearing is not always required. Yazzie was materially different from the case we have here. In Yazzie, the Court was not interpreting the Confrontation Clause. It was actually interpreting, it was actually ruling on a courtroom closure motion, whether the court could be closed to the public during a certain, a specific portion of the testimony. The Court was not interpreting the Supreme Court's decision in Craig, which had the Confrontation Clause issue set squarely before it. And, in fact, in Yazzie, the Ninth Circuit, or this Court stated that an alternative to closure would be video testimony through two-way closed-circuit television. And it also noted at page 1290 of that decision that closed-circuit testimony would actually materially change the nature of the proceedings. And so I think that the Court in Yazzie actually contemplated that a closure motion is materially different, that the considerations are different in a video testimony motion, and that the Supreme Court decision in Craig actually requires an evidentiary hearing. And I think that it's clear why, if we look at this case, because we look at the government cites to Agent Orth's affidavit where he recited numerous conclusions that he was drawing based on his conversations with the mother. That's exactly why Mr. Eille requested an evidentiary hearing in this case, simply to test those conclusions and those statements that Agent Orth was making. There's no way to test those just if we proceed by affidavit. For example, when did the mother say this to Agent Orth? How does she know that DE is very scared? Did she have any subsequent conversations? Those are all questions that defense counsel would have asked to Agent Orth if it had been permitted to hold that evidentiary hearing. With respect to the crime of violence issue, the government's reliance on the Granboyce decision, I think for the reasons that we stated in our briefing, is just inapposite here. I think that this Court's subsequent decisions after Granboyce have indicated that the per se crime of violence analysis just doesn't apply after Taylor and that the Taylor analysis and the categorical approach requires that we analyze each conviction on a case-by-case basis. And I think when we do that, we see that the prior convictions that Mr. Eille was convicted of simply didn't involve the use of force, and I think that that's clear either using the categorical approach or even if the Court were to look at the underlying documents. And with respect to the Beckles decision, we would rely on the arguments that we made in our briefing. I don't think that the District Court or the government actually ever relied on the residual clause below, and if this Court were to analyze the effect of Beckles on this case, I think that the proper approach would be to hold that simply isn't applicable here because of the government's waiver. Thank you. Thank you. Thank both of you for your argument this morning. United States v. Eille is submitted.
judges: McKeown, Gould, Rothstein